**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KNIGHTBROOK INSURANCE CO.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 15-2929** |
| **NORTHFIELD INSURANCE CO.** | : | |

**MEMORANDUM**

**Kearney, J.** **January 26, 2016**

In this insurance coverage declaratory judgment action, we review obligations of an auto and a general liability insurer when a wheelchair patient accidently rolls off the back of a wheelchair accessible ambulance van and sues in state court alleging the van operator failed to adequately strap him into the van and the ambulance lift was not in place. The injured party's claims sounds, at least initially, in both auto and professional liability coverage. Upon closer review, we find a person falling off the back of a wheelchair accessible ambulance van because the operator did not secure the passenger or ensure the proper location of the van lift primarily states a claim arising under the ambulance company's auto liability policy and the auto carrier must indemnify its insured. Because the injured party's complaint sounds both in professional negligence and in auto liability, we also find the professional liability carrier equally shares in the obligation to defend its insured. In the accompanying order, we grant the professional liability insurer's motion for summary judgment on the duty to indemnify but find it shares an equal responsibility to share in now-fixed defense costs.

## I. UNDISPUTED FACTS[1]

John Stratton sued Medex Ambulance, Inc. ("Medex"), its employee Nancy Ortiz ("Ortiz"), and Bala Nursing Home and Retirement Center ("Bala") for professional liability and negligence in operating an ambulance on April 28, 2011.[2] Plaintiff Knightbrook Insurance Company ("Knightbrook") insures Medex under Commercial Auto Policy No. 15000070 (the "Knightbrook Policy").[3] Defendant Northfield Insurance Company ("Northfield") also insures Medex under a General Liability and Professional Liability Policy No. WS069118 (the "Northfield Policy').

### A. Facts relating to the underlying action.

Mr. Stratton is a wheelchair bound Bala resident.[4] Medex transports wheelchair-bound individuals. On April 28, 2011, Ortiz drove Mr. Stratton to a regularly scheduled doctor's appointment.[5] Ortiz loaded Mr. Stratton into the van by using a wheelchair lift in the rear of the wheelchair accessible ambulance van insured by Knightbrook.[6] After Mr. Stratton's appointment, Ortiz loaded him into the ambulance van and picked up two additional passengers for return to Bala: one in an electric wheelchair and one with a walker.[7] Upon returning to Bala, Ortiz first unloaded the patient with the walker followed by the patient with the electric wheelchair.[8] After Ortiz unloaded the patient in the electric wheelchair, the wheelchair lift remained in the down position and Ortiz to return the lift to the level necessary for Mr. Stratton to exit at the rear of the ambulance van.[9] Mr. Stratton alleged Ortiz failed to secure him with a lap belt or securing straps.[10] Mr. Stratton's wheelchair then began to move towards the open rear of the vehicle.[11] Mr. Stratton's wheelchair tipped over out of the rear of the vehicle.[12] As a result, Mr. Stratton suffered a T8 vertebral body fracture requiring surgery, along with various other injuries.[13]

**B. Mr. Stratton's lawsuit.**

In April 2013, Mr. Stratton sued Medex, Ortiz and Bala in state court. Medex tendered a defense to Knightbrook seeking coverage under the Knightbrook auto policy.[14] Knightbrook undertook the defense of Medex and Ortiz under a reservation of rights.[15]

Medex then tendered the defense and indemnity of the underlying action to Northfield on August 16, 2013.[16] Northfield declined to undertake a defense or provide coverage under the Northfield Policy declaring "[t]he use of the auto is clearly a factor here" and accordingly, the Knightbrook Policy should provide coverage.[17]

Knightbrook continued to defend Medex and Ortiz. Stratton and Medex settled on January 31, 2015.[18] Knightbrook paid $187,500 of the settlement.[19] Knightbrook also claims it paid $21,782.78 in fees and costs to counsel to defend Medex.[20]

Knightbrook then sued Northfield in this Court seeking to recover its indemnity and defense cost payments of $209,282.78 and asking we declare: 1) the Knightbrook auto policy does not provide coverage for Mr. Stratton's claim; 2) Knightbrook did not owe a duty to defend Medex; and 3) the Northfield professional liability policy provided coverage for Mr. Stratton's claim and Northfield owed a duty to defend Medex.[21]

**C. The Insurance Policies.**

The Knightbrook auto policy provides coverage for accidents involving the use of an automobile:

> *We* will pay for the benefit of *insureds*, up to the applicable limit of liability [ ] shown in the Declarations, those sums that *insureds* become legally liable to pay as damages because of *bodily injury* or *property damage* insured in this policy that is caused by an *accident* and results from the maintenance, ownership, or use of a covered auto.[22]

This auto policy insurance is primary to any other in the event of an accident involving a covered auto owned by Medex.[23]

The Northfield policy provides general liability coverage but contains "exclusion g" as amended by the exclusion endorsement:

> This insurance does not apply to . . . Bodily injury or property damage arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, auto, or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading and unloading. [24]

The Northfield policy also defines the term "loading and unloading":

> Loading or unloading means the handling of any person or property:
>
> a. After it is moved from the place where the person or property is accepted for movement into or onto an aircraft, watercraft, or auto
> b. While in or on an aircraft, watercraft, or auto; or
> c. While being moved from an aircraft, watercraft or auto to the place where the person or property is finally delivered. [25]

The definition of loading and unloading excepts "the movement of any person or property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or auto."[26]

## II. ANALYSIS

Both parties move for summary judgment based on Pennsylvania law. [27] Knightbrook argues Northfield owed a duty to provide coverage and defend Medex because Knightbrook's Policy is not triggered for coverage since Mr. Stratton's injuries did not "occur as a result of 'use' of the vehicle."[28] Faced with Northfield's Policy excluding coverage for "loading and unloading", Knightbrook argues this exclusion does not apply when the insured moves a person by a mechanical device which it claims includes a wheelchair.[29] Knightbrook makes secondary arguments concerning Medex's expectation of primary coverage from Northfield's Policy.[30]

Finally, Knightbrook argues the two Policies provide concurrent coverage for separate acts of professional and general negligence.[31]

***i. Did Mr. Stratton's injuries occur as a result of the "use" of the ambulance?***

"The interpretation of a contract of insurance is a matter of law for the courts to decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract."[32]

We now determine whether Mr. Stratton's injuries occurred as a result of the "use" of an auto. If so, the Knightbrook Policy is triggered and Knightbrook is required to provide coverage. In determining whether the incident arose out of the "use" of an auto, we must study the relationship between the injury and the vehicle.[33] For the incident to arise out of the use of a motor vehicle a "causal connection" must exist between "the injuries and use of the motor vehicle."[34] The connection need not rise to the level of proximate causation as "[b]ut for causation, i.e. a cause and result relationship" is enough to satisfy the policy provision.[35] Yet, causation requires more than "mere happenstance" or "fortuity."[36] In examining causation, we "must determine the instrumentality used to cause the injury."[37]

The Knightbrook policy provides coverage for injuries resulting from "the maintenance, ownership, or use of a covered auto."[38] The Northfield Policy excludes coverage for "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to any insured."[39] Knightbrook argues Mr. Stratton's injuries did not result from the use of an auto and therefore, Knightbrook is not required to provide coverage and is entitled to reimbursement of the settlement funds paid to Mr. Stratton.[40] Specifically, Knightbrook argues the ambulance van is

simply the "situs" of the injury and any connection between the injuries and the vehicle is "tangential" at best rather than a "but-for" cause of the injury.[41] Knightbrook further contends Mr. Stratton's allegations solely address Ortiz's professional negligence which would potentially be covered by the Northfield policy and do not relate to using the ambulance.[42]

Knightbrook relies on three cases we find distinguishable. In *U.S. Underwriters*, Robert Hipl parked his car at a client's office in preparation for a business meeting.[43] Exiting from the driver's side of his car, Hipl placed his left foot on a patch of grease upon which he slipped.[44] Hipl fell and hit his back on the sill of the car causing injuries.[45] His employer's workers' compensation insurer paid him benefits and acquired a subrogation lien on third-party benefits recovered against the client.[46] The client's insurer sought to invalidate the lien pursuant to the Motor Vehicle's Financial Responsibility Law's bar on subrogation where there injuries "arose from the maintenance or use of a motor vehicle."[47] Our Court of Appeals determined the injuries did not arise from the use of an auto as the "cause of the injury . . . was the substance on the surface of the parking lot."[48] No causal connection existed as we cannot find a "mere fortuity" since Hilpl remained in his car when he slipped.[49]

Similarly in *Smith v. United Services Automobile Ass'n*, 572 A.2d 785, 785-86 (Pa. Super. Ct. 1990), children in a haywagon threw hay in Smith's face temporarily blinding him and causing him to crash into a tree and fracture his skull.[50] The Pennsylvania Superior Court found the injuries were not a result of the use of the vehicle but rather "the intentional act of a third-party."[51] Because the "instrumentality" causing the injury was "external to the vehicle, the causal connection was too tenuous to find the injuries occurred as a result of the use of the automobile.[52]

Finally, in *Erie Insurance Exchange v. Transamerica Ins. Co.*, a toddler set a parked car in motion rolling down a hill striking injuring one child and killing another.[53] In the ensuing lawsuit against the toddler's parents, Transamerica—the parents' homeowner's insurer—argued the auto insurer owed the duty to defend and pay the settlement funds as the injuries arose out of the use of an auto.[54] The Pennsylvania Supreme Court held the injuries did not arise out of the "use" of an automobile.[55] The court found the three and half year-old toddler was not "capable of using an automobile in a rational, purposeful sense within the meaning of the relevant policy provision." [56]

These cases are not representative of the facts before us. In *U.S. Underwriters* and *Smith,* the instrumentality causing the injuries were clearly external to the vehicle—the grease patch and the hay. Thus, the presence of the vehicle was "merely incidental to the conditions that caused the injuries at issue."[57] Additionally, in *Erie*, the Pennsylvania Supreme Court did not reach the question of causal connection as it determined a toddler was not capable of "using" a vehicle within the meaning of the policy provision. It has no bearing on our decision in the instant case.

Mr. Stratton's facts present a situation where the causal connection between his injuries and the ambulance is much closer. Ortiz was in the process of removing Mr. Stratton from the ambulance when he fell out of the open rear. Ortiz had allegedly failed to properly strap Mr. Stratton into his wheelchair and raise the automatic wheelchair lift to the elevation of the ambulance rear. The ambulance had "more than an 'incidental involvement . . . in the situation that gave rise to [Mr. Stratton's] injuries.'"[58] The "the accident was a direct consequence of the use of the vehicle for its intended purpose," namely transporting Mr. Stratton to and from the hospital for his doctor's appointment.[59] This conclusion is bolstered by the use or improper use of the wheelchair lift permanently affixed to the rear of the ambulance van.

This is not the case where the vehicle is merely the "situs" of the injury without any additional causal connection.[60] Rather, the use of the vehicle caused the injuries.

We also find Knightbrook's arguments based on Mr. Stratton's allegations unpersuasive. True, the underlying complaint details allegations concerning Ortiz's negligence in failing to properly strap in Mr. Stratton to his wheelchair.[61] But the underlying complaint also details Ortiz's improper use of the vehicle, particularly the wheelchair lift left in the down position.[62] Knightbrook excludes these allegations from its analysis. Moreover, Ortiz's negligence does not sever the causal connection between the use of the ambulance and Mr. Stratton's injuries.[63]

There of course may be "two or even more causes of an accident."[64] In *Lehrer/McGovern*, a flatbed truck operator raised the bed of the truck and the large refuse container slid down the bed, on the pavement for ten feet and collided with the gang box.[65] The gang box then fell onto the injured party.[66] The employer argued the negligence of the operator severed any causal connection the vehicle had with the injuries.[67] The Pennsylvania Commonwealth Court found this argument facially flawed and rejected it while finding the injuries arose out of the use of the vehicle.[68]

We find Mr. Stratton's injuries are causally connected to Medex's use of the ambulance. He suffered injury because he is in the vehicle. The use of the vehicle constitutes a but-for cause of the injuries and the Knightbrook Policy is triggered. Because we find the incident occurred as a result of the use of the ambulance, we need not reach Knightbrook's other arguments.[69] Accordingly, we deny Knightbrook's motion for summary judgment on coverage.

### *ii. Did Northfield owe Medex a duty to defend in the underlying suit?*

Knightbrook argues Northfield owed Medex a duty to defend in the underlying suit regardless of the duty to indemnify. An insurer's "duty to defend is broader than the duty to

indemnify."[70] "The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage."[71] This distinct and separate obligation is governed by the allegations of the complaint in the underlying action.[72] Thus, an insurer has a duty to defend when "the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[73] It is the court's obligation to analyze the factual allegations in the complaint "regardless of the particular causes of action."[74] Even if a court determines coverage is triggered for indemnification purposes in one policy and not the other, the Pennsylvania Supreme Court reminds us:

> [i]n a declaratory judgment action to determine whether a claim is covered, the court resolves the question of coverage. The court's role in the declaratory judgment action is to resolve the question of coverage to eliminate uncertainty. If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend. The court's resolution of the question of coverage does not, however, retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty.

75

Here, we address a close call whether Northfield owed Medex a duty to defend in the underlying suit until such time as coverage could be resolved. Simply because we found the Knightbrook Policy must provide coverage for indemnifying does not relieve our duty to determine whether Northfield should have been tendering a defense, at least in part, until a coverage determination. By not seeking a court determination, Northfield decided to postpone potential liability for defense costs to a later date.

Mr. Stratton's allegations evidence Ortiz's negligence in the use of the auto but also potential professional negligence.[76] Mr. Stratton describes his case as "a professional liability action and some or all of the Defendants are licensed professional health care providers as defined by the MCARE Act."[77] Many allegations in the counts relate directly to Ortiz' liability regardless of whether it occurred around the ambulance van including, by way of example,

failing to: "properly and appropriately follow Medex and/or Bala Nursing Home policies and procedures with respect to transport of patients; properly and appropriately notify management at Medex and/or Bala Nursing Home that Plaintiff may require an elevated level of care and supervision during transport."[78] Many, if not most, of the allegations relate to conduct in and around the ambulance van.[79] Mr. Stratton sought damages relating to negligence in the operating of the ambulance van.

On balance, we find Mr. Stratton's allegations encompass both professional liability and injury resulting from operating the insured vehicle. We cannot find his claim did not potentially focus on Ortiz's professional liability. Given the potential for a professional liability claim at the outset of the claim, we will divide the liability on the duty to defend and find both parties equally responsible for the defense of their insured Medex.

Unfortunately, while both parties sought summary judgment on the duty to defend claim relating to $21,782.78 in fees and costs allegedly based in defense costs, neither party adduced evidence on the reasonableness of fees or whether they were paid. As such, while we find Knightbrook is entitled to reimbursement of one-half of its fees and costs, we cannot find the reasonableness of fees and costs without further evidence from the parties. As both parties concede we may review this issue without a jury, and we do not presently see a question of fact, we direct the parties to address this issue by petition and response in the accompanying Order.

## III. CONCLUSION

Mr. Stratton's injuries arise from falling out of the back of a wheelchair accessible ambulance van when the van driver forgot to return the ambulance lift. But for his presence in the van, he would not have been injured. The cause of his injury is his presence in the ambulance, a vehicle covered by a Knightbrook auto insurance policy. Mr. Stratton's complaint

specifically pleads both professional liability and auto negligence, including focusing on all the professional liability occurring solely around the transport of persons in a vehicle. It is difficult to discern how Northfield could have believed it had no liability on the defense costs given a fair reading of Mr. Stratton's complaint. While we grant Northfield's motion for summary judgment finding no duty to indemnify Medex, we deny its motion relating to the duty to defend in part and find it must equally share in the defense costs once they are shown to the Court in a petition demonstrating the reasonableness of the fees actually paid by Knightbrook. We find Knightbrook responsible for the duty to indemnify but both insurers share the duty to defend, as reflected in the accompanying Order granting in part and denying in part both carriers' motions.

---

[1] The Court's Policies require the movants file a Statement of Undisputed Material Facts ("SUMF") in support of a Fed.R.Civ.P. 56 motion, as well as a joint appendix of exhibits or affidavits ("J.A.").

[2] (J.A. at 9-21.)

[3] (Pl.'s SUMF ¶ 12.)

[4] (*Id.* at 12, ¶¶ 13-14.)

[5] (*Id.* at 12, ¶ 14.)

[6] (Pl.'s SUMF ¶ 19; J.A. at 271.)

[7] (J.A. at 291-92.)

[8] (J.A. at 303-305.)

[9] (Pl.'s SUMF ¶ 24; J.A. at 13, 306-07.)

[10] (J.A. at 13, ¶ 23.)

[11] (*Id.* at ¶¶ 24-26.)

[12] (*Id.* at ¶ 26.)

[13] (*Id.* at ¶ 28.)

---

[14] (Pl.'s SUMF ¶ 28.)

[15] (*Id.* at ¶ 29.)

[16] (*Id.* at ¶ 30; J.A. at 173-75.)

[17] (J.A. at 176-78.)

[18] (*Id.* at 181-86.)

[19] (Pl.'s SUMF ¶ 36; J.A. at 181-86.)

[20] (Pl.'s SUMF ¶ 37; J.A. at 187-230.)

[21] (ECF Doc. No. 1, at ¶¶ 5-30.)

[22] (J.A. at 71) (emphasis in original).

[23] (*Id.* at 82.)

[24] (*Id.* at 142.) (internal quotations omitted).

[25] (*Id.* at 140.)

[26] (*Id.*)

[27]The parties do not dispute Pennsylvania Law governs the interpretation of the insurance policies. Our summary judgment analysis does not change when confronted with cross-motions for summary judgment. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

---

[28] (ECF Doc. No. 20-1, at 8-15.)

[29] (*Id.* at 6-8.)

[30](*Id.* at 15-19.)

[31](*Id.* at 20-21.)

[32] *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994); *Allstate Property and Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012).

[33] *Manufacturers Ca. Ins. Co. v. Goodville Mut. Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961).

[34] *Alvarino v. Allstate Ins. Co.*, 537 A.2d 18, 21 (Pa. Super. Ct. 1988).

[35] *Squires*, 667 F.3d at 391 (citing *Manufacturers*, 170 A.2d at 573).

[36] *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, 80 F.3d 90, 95 (3d Cir. 1996).

[37] (*Id.* at 142.)

[38] (J.A. at 71.)

[39] (*Id.* at 142.)

[40] (ECF Doc. No. 20-1, at 8-15.)

[41] (*Id.* at 11.)

[42] (*Id at* 13-15.)

[43] 80 F.3d at 92.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.* at 95.

[49] *Id.*

[50] *Id.* at 786.

[51] *Id.* at 787.

[52] *Id.*

[53] 533 A.2d 1363, 1365 (Pa. 1987).

[54] *Id.* at 1365.

[55] *Id.* at 1367-68.

[56] *Id.*

[57] *Squires*, 667 F.3d at 388.

[58] *Squires*, 667 F.3d at 393 (quoting *Alvarino*, 537 A.2d at 21.).

[59] *Squires*, 667 F.3d at 393.

[60] *See Roach v. Port Auth. of Allegheny Cnty.*, 550 A.2d 1346, 1350 (1988) (holding that a bus passenger injured by two other passengers fighting did not establish the requisite causation); *Alvarino*, 537 A.2d at 21 (finding passenger bitten by dog chained inside of a van did not suffer injuries arising out of the maintenance or use of a motor vehicle); *Erie Ins. Exch. v. Eisenhuth*, 451 A.2d 1024, 1025 (Pa. Super. Ct. 1982) (injuries of passenger shot while seated in vehicle did not satisfy causal connection).

[61] (J.A. at 13-14, ¶¶ 21, 23, 26.)

[62] (*Id.* at ¶¶ 20, 22, 25.)

[63] *See Lehrer/McGovern v. Workers' Compensation Appeal Board*, 720 A.2d 853, 854 (Pa. Commw. Ct. 1998).

[64] *Squires*, 667 F.3d at 395 (citation omitted).

[65] 720 A.2d at 854.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] We also decline to find the policies provide concurrent coverage as they insure separate risks.

---

[70] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (Pa. 2006).

[71] *Britamco Underwriters, Inc. v. Grzeskiewicz*, 639 A.2d 1208, 1210 (Pa. Super. Ct. 1994).

[72] *Id.*

[73] *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr.*, 2 A.3d 526, 541 (Pa. 2010).

[74] *Alea London, Ltd. v. Woodlake Mgmt.*, 594 F. Supp. 2d 547, 550-51 (E.D. Pa. 2009) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

[75] *Jerry's Sports Ctr.*, 2 A.3d at 542 (internal citations omitted).

[76] (J.A. at 13-14, ¶¶ 20-26.)

[77] (J.A. 11a ¶ 11)

[78] (J.A. 16a ¶35 (k)(n)).

[79] (J.A. 15a, 16a ¶¶ 35 (a)(b)(c)(d)(e)(f)(g)(h)(j)(l)(m)(o)(p) and (q)).